Johnson vs. Martin et al.

JAMES L. JOHNSON, plaintiff in error, vs. MARTHA C. MARTIN, and others, defendants in error.

[1.] The notice of a party, that he intends to apply for a writ of *certiorari*, to carry up to the Superior Court a decision of the Inferior Court, need not be accompa-

Johnson vs. Martin et al.

nied, either by a copy of the bill of exceptions tendered to and overruled by the Inferior Court, nor of the petition for *certiorari.*

[2.] On an issue of fraud, tendered by the creditors, to an application by a debtor, to take the benefit of the Act passed for the relief of honest debtors, counsel for the creditors are entitled to open and conclude the argument.

[3.] The schedule filed by an insolvent debtor, should contain a list of the property which he owned at the time of filing the same, and not the property which he had at the date of his arrest.

[4.] An insolvent debtor, notwithstanding his arrest and imprisonment, may *bona fide* sell or mortgage his property for cash, or to pay or secure a pre-existing debt.

[5.] All fraudulent conveyances or transfers of property, made by an insolvent debtor, to hinder or delay creditors, or in trust for the benefit of himself or his family, before or at the time of his arrest, or subsequently, will prevent him from taking the benefit of the Act.

[6.] If a debtor, at the time of his arrest or after, or so short a time before as to create a just suspicion respecting the matter, is seen with money or other effects, it is competent for the creditors to prove the fact; and it will be incumbent upon the debtor to account for the same, in order to relieve himself from the inference of fraud, which the transaction suggests.

Certiorari, from Spalding county. Decision by Judge CABINESS, at November Term, 1857.

James L. Johnson was arrested by virtue of a *ca. sa.,* in favor of Jason Burr, and applied to the Inferior Court to take the benefit of the Act for the relief of honest debtors.

This application was resisted by Martha C. Martin, and other creditors, on the ground of fraud in the schedule filed by the applicant.

Counsel for the defendant in *ca. sa.* claimed the right to open and conclude. The Inferior Court decided that the defendant was entitled to the opening and conclusion, and the creditors excepted.

During the trial, the Inferior Court further held and charged the jury, that defendant in *ca. sa.,* up to the *filing of his schedule,* had the right, in good faith, to dispose of all or any portion of his estate, so he did not do it to hinder, delay or defraud creditors; and he was not bound to include or insert in his schedule, property thus disposed of. To which ruling and charge counsel for the creditors excepted.

A *certiorari* was sued out by the creditors, to correct the errors complained of.

Upon the case being called for trial in the Superior Court, counsel.for the defendant in *ca. sa.* moved to dismiss the *certiorari,* on the ground that due and legal notice of the application for *certiorari* had not been served upon him. It was admitted that *notice* of the application was given, but it was objected that said notice was not accompanied with a copy of the exceptions, or petition for *certiorari.* The Court held the notice sufficient, and overruled the motion to dismiss, and counsel for the defendant in *ca. sa.* excepted.

Upon hearing the case, the presiding Judge sustained the *certiorari* and order a new trial, on the ground that the Inferiar Court erred in giving defendant's counsel the opening and conclusion ; and further, on the ground that the Court erred in confining the inquiry as to what property the defendant had, to the time of filing the schedule, when it should have extended to the time of his arrest.

To which decision counsel for defendant excepted.

BECK; and ALFORD, for plaintiff in error.

MARTIN; and PEEPLES, *contra.*

*By the Court.*—LUMPKIN J. delivering the opinion.

This case originated in the Inferior Court, being an application by James L. Johnson, to take the benefit of the Act for the relief of honest debtors. A judgment having been rendered in favor of Johnson, upon an issue of fraud, the cause was brought up by *certiorari* to the Superior Court.

[1.] A motion was made to dismiss the *certiorari* at the hearing, upon the ground that neither a copy of the bill of exceptions tendered in the Inferior Court, nor of the petition for *certiorari,* accompanied the notice of the parties' intention to apply for the writ.

Johnson vs. Martin et al.

We dispose of this objection summarily, by saying, that nothing of this kind is required by the law.  *Cobb*, 523.

[2.] The next error complained of is, that the Inferior Court held, that counsel for the applicant was entitled to open and conclude the argument before the jury.

The rule of Court, it is true, gives this right to the movant, but this means, when the movant has something to do. In the present case, it is true, Johnson, the debtor moves to take the oath and be discharged. He has no proof to make, and nothing more to do. Now comes in another rule of practice which declares, that in all collateral issues springing out of a cause, the party holding the affirmative shall open and conclude. Is not this that case? An issue of fraud is tendered by the creditors. It is collateral to the main proceeding. It springs out of it, and arrests its progress until disposed of. The creditors hold the affirmative of the issue; for fraud will not be presumed, it must be proven. The burden of proof is upon the creditors; they, therefore, are entitled to open and conclude the argument.

These two points are matters of practice merely; the remaining ground is one of importance—it is one of principle.

[3.] The Inferior Court held, that the schedule should only contain the property belonging to the defendant at the time the schedule was filed : and that up to that time the debtor had the right to sell or mortgage his property, provided the transaction was *bona fide,* and not done fraudulently, to hinder or delay creditors. On the contrary, the Judge of the Superior Court held, that the schedule should contain all the property, money or effects which the debtor possessed at the time of his arrest; and that after that time, he had the right to dispose of his property by sale or otherwise.

With great and sincere deference to the opinion of our clear-headed, sound-minded, and exceedingly sensible brother Cabiness, we cannot concur in his view of the law in this case. Notwithstanding the arrest and imprisonment of the debtor, we entertain no doubt but that he may, up to the

time of filing his schedule, sell or mortgage his property, provided it be not done fraudulently, and to hinder and delay his creditors. Of course, we do not intend to convey the idea that the debtor can dispose of property which is covered by a judgment lien. The fourth section of the Act of 1823, *( Cobb,* 381,*)* is relied on by the Judge in support of his *opinion.* We respectfully submit, that there is nothing in this section to justify the construction put upon it. True, it speaks of rendering a full and fair schedule of the debtor's property. When ? Of course, at the time the Act requires the schedule to be filed; and by looking at the oath prescribed by the statute, there can be but little doubt upon this point. What is the oath ? Why, that the applicant is not possessed of any real or personal estate, debts, credits or effects, securities or contracts, " other than are contained in the schedule now delivered; and I have not directly or indirectly, since my imprisonment (or arrest) or before, sold, leased, assigned, or otherwise disposed of, or made over in trust for myself or otherwise, any part of my lands, estates, goods, stock, money, securirities or contracts, whereby any money may hereafter become payable, or any real or personal estate, whereby to have or expect any benefit or profit to myself, my wife, my heirs," &c. *Cobb,* 380. That is, the debtor swears in substance, that the schedule, at the time it is delivered, contains all that the debtor then owned; and that he has not, since his arrest or before, made any fraudulent conveyance or transfer of his property, for his own or his family's benefit, or to defeat the payment of his debts.

In *Cheek vs. Dews,* 4 *Iredell's Law Rep.* 284, this identical question was decided, and upon a statute containing an oath, of which ours seems a *verbatim* transcript; and the Supreme Court of North Carolina put the same construction upon their insolvent debtors' Act that we do. The Lords' Act in England, to be found in a note to *Wendell's Blackstone, p. 323,* has received a similar exposition.

And it is right unquestionably, not only upon authority,

Johnson vs. Martin et al.

but upon principle. The *fi. fa.* binds all the debtor's property, from the date of the judgment; the *ca. sa.* binds nothing but the debtor's body, upon which it is executed, leaving the debtor's property to be disposed of as he pleases; still, when he comes to claim the benefit of the law passed for his relief, the debtor must bring himself within its provisions. And he does this, by swearing that the schedule *now* delivered, contains a true account, not of what he owned at the date of his arrest, but in the present tense—of what I am now possessed.

[4 & 5.] If, under the Act of 1818, an insolvent debtor may *bona fide* sell or mortgage his property, why not, and to the same extent, after his arrest, under the insolvent debtors' Act? Indeed, if the construction put upon the Act of 1818 be right, the construction put by the Circuit Judge upon the Act of 1823, is necessarily wrong; the two adjudications cannot stand together.

The Inferior Court erred in refusing to charge the jury, that if the creditors had shown, that just before the filing of the schedule, the debtor had a considerable quantity of money in his possession, it devolved upon him to account for it.

We think the *onus* was cast upon the debtor, to show what had become of this money. If he had paid it out, he could readily prove the fact. If the debtor sells property for cash, or to pay a just debt, and one owing at the time of his arrest, all these are affirmative matters, which he can show; and it is incumbent upon him to do so, if he would relieve himself from the inference of fraud.

Of course, with our view of the law, the case should be sent back to the Inferior Court, to abide another trial. And so we rule.

Judgment reversed.