42483.   UNITED STATES FIRE INSURANCE COMPANY
v. TUCK.

SUBMITTED JANUARY 9, 1967—DECIDED APRIL 18, 1967.

568

*Matthews, Maddox, Walton & Smith, John W. Maddox,* for appellant.

*Wayne W. Gammon,* for appellee.

QUILLIAN, Judge. ■ The enumerations of error presented the appellant's contentions: (a) that the evidence was insufficient to support the verdict; (b) if sufficient to support a verdict of liability on the policy, the evidence was insufficient to support a verdict finding bad faith. The first of the contentions is based upon the premise that the evidence did not support the verdict's award to the plaintiff of a named amount as compensation for the loss of his swimming pool. This is a pivotal issue because the conclusion is inescapable that unless the plaintiff was entitled to recover for loss of the pool, the only loss for which he sued, there can be no valid assessment of penalties and attorney's fees based upon the refusal to pay the loss.

When this case came on for a hearing in this court, counsel for the appellant conceded: "The plaintiff introduced in evidence the policy for $2,500, the amount of damage to the swimming pool, $2,500 to $4,500, and the amount of reasonable attorneys fees for handling a case of this kind, $1,500 to $2,000. There was substantially no dispute as to these items."

Implicit in the quoted concession was the appellant's consent that the only remaining elements of proof necessary for the plaintiff's recovery for the amount of his loss was that the loss was caused by a hazard or risk within the provisions of the policy.

The above analysis of the issues for consideration is furnished in order to place the case in convenient posture for review.

Where, as in the case sub judice, the plaintiff sues upon an insurance policy to recover compensation for a loss he has admittedly sustained, the primary inquiry is whether the loss resulted from a hazard against which the policy afforded protection. Aetna Casualty & Surety Co. v. Hanna, 224 F2d 499 (53 ALR2d 1125). The policy upon which the plaintiff bases his recovery provided the protection for his swimming pool against no hazard or risk except "the perils of lightning." The petition to which the policy is attached alleged that the pool was destroyed by lightning. Defendant, appellant here, denied liability and insisted that lightning was not the cause of damage to the pool but that pressure, that is the presence of an accumulation of water by the walls of the pool, caused it to collapse.

The burden of proof was upon the plaintiff to prove by a preponderance of the evidence that lightning actually destroyed the swimming pool. Clouse v. St. Paul Fire &c. Ins. Co., 152 Neb. 230 (40 NW2d 820, 15 ALR2d 1008). He was entitled to recover, if at all, upon satisfactory proof of this basic fact. However, in the case of *Bunn v. Hargraves,* 3 Ga. App. 518 (4) (60 SE 223) is the pronouncement: "This court has no power to determine that the preponderance of the evidence is in favor of one party to a cause rather than the other, or to award a new trial in any case where there is any evidence sufficient to support the verdict rendered." The rule for determining when the issue as to whether a risk or hazard within the coverage of the policy caused the insured's loss should be submitted to the jury is: "Only when the plaintiff's evidence does fail to prove the case as laid in the petition, without revealing as defense matter fatal to the cause pleaded, or where the evidence adduced by the defendant as a matter of law conclusively refutes the proof made of the plaintiff's case can a verdict for the defendant be directed. *City of Commerce v. Bradford,* 94 Ga. App. 284 (94 SE2d 160)." *Moate v. H. L. Green Co.,* 95 Ga. App. 493, 500 (98 SE2d 185).

The *Bradford* and *Moate* cases, in substance, pronounce the principle that prima facie proof of the plaintiff's cause is sufficient to create an issue of fact and carry the case to the jury unless conclusively rebutted by other evidence. Necessary in the proof of a prima facie case is satisfactory evidence of every fact essential to the right of recovery, and in this case satisfactory evidence that the swimming pool was destroyed by lightning. In the case of *Georgia R. & Bkg. Co. v. Smith,* 83 Ga. 626, 627 (6) (10 SE 235) it was held: "Prima facie evidence is such evidence as in judgment of law is sufficient, and if not rebutted remains sufficient. It may be rebutted by developing additional facts consistent with its truth, but tending to an opposite conclusion, or by proving it untrue or untrustworthy in whole or in some material part."

The standard for testing the sufficiency of circumstantial evidence, important in the decision of the case because much of the evidence was circumstantial, is found in the case of *Old Colony Ins. Co. v. Dressel,* 109 Ga. App. 465, 468 (136 SE2d 525):

"When a reasonable mind may accept the circumstantial evidence presented as adequate to support a finding in favor of one of the parties on an issue of fact, a verdict based on such finding is authorized even though the evidence may also reasonably support a finding in favor of the other party on this issue of fact." In *Old Colony Ins. Co. v. Dressel*, 220 Ga. 354 (138 SE2d 886), this holding was approved. See: *McCarty v. National Life &c. Ins. Co.*, 107 Ga. App. 178, 182 (129 SE2d 408); *Pippin v. Mut. Life Ins. Co. of N. Y.*, 108 Ga. App. 741, 750 (134 SE2d 446).

*Ready-Mix Concrete Co. v. Rape*, 98 Ga. App. 503, 511 (106 SE2d 429), factually similar in some aspects to the instant case, is precedent for the conclusion that visual observation is not essential in determining whether a particular force produced a given result.

The plaintiff's evidence concerning the cause of the pool's collapse came as near being direct as was possible, not to be so catalogued. This is obvious in the review of the testimony of Mrs. Robinson, a neighbor who resided across the street and approximately 200 feet distant from the plaintiff's dwelling house, that about 4:30 on the afternoon when the pool was allegedly destroyed, from a window in her home she watched an electric storm in progress and that a large bolt of lightning descended from the sky right behind the plaintiff's house (the pool was situated 30 or 40 feet to the rear of the house), straight down over the swimming pool, and at the same instant electric lights in her home were blown out.

Another witness, Mrs. Davis, who resided on the adjacent lot and approximately 75 to 100 feet from the swimming pool gave as her evidence at approximately that time a terrible flash of lightning descended and when it struck there was a terrible blow from which the vibration could be felt in her home. Coupled with this evidence is the testimony of the plaintiff that on the same day prior to the electric storm the pool was intact and full of water, and that when he returned from a business trip at about 1:30 the next morning he found the pool caved in and crushed like a watermelon that had been dropped. This was not direct evidence merely because it fell short of proving by an

eyewitness the ultimate fact that lightning struck the swimming pool. Mrs. Robinson could not see the actual contact of the lightning with the pool, because her view of the pool was obscured by the plaintiff's house. Nevertheless, the plaintiff's evidence furnished facts from which a logical conclusion could be drawn that lightning did strike and destroy the pool. It measured up to the standard of sufficiency applied to circumstantial evidence recognized in *Old Colony Ins. Co. v. Dressel,* 109 Ga. App. 465, 468, supra; *McCarty v. National Life &c. Ins. Co.,* 107 Ga. App. 178, supra; *Pippin v. Mut. Life Ins. Co. of N. Y.,* 108 Ga. App. 741, supra. Thus it appears there was satisfactory proof of the plaintiff's case.

The ruling that the plaintiff's evidence prima facie proved lightning caused the collapse of the pool is but the first step in passing upon whether the evidence as a whole authorized his recovery.

The next question to be considered is whether the defendant's evidence conclusively refuted the plaintiff's proof and demanded a verdict in its favor.

The defendants adduced no evidence in direct rebuttal to the plaintiff's proof that a bolt of lightning struck the pool, except the testimony of the defendant's adjuster, Mr. Wagner, and two witnesses, Mr. Ivey and Mr. Rogers, who testified that upon their inspection of the pool, made sometime after its walls fell, they discovered no sign that lightning caused the damage.

The defendants offered no direct proof to rebut the plaintiff's evidence that lightning actually struck the pool, but did submit evidence to show hydrostatic pressure was the probable cause of the pool's collapse. Mr. Ivey and Mr. Rogers testified that for various reasons the construction of the pool was not substantial and was faulty; that there were old grouted cracks in the walls of the pool; that voids or vacant spaces appeared in the earth that encased one of the walls before it fell; and that these voids were caused by a failure to properly tamp or compress the dirt about the pool when it was installed. They testified it was their opinion that the faulty construction, defects and failure to tamp the earth rendered the pool vulnerable to the pressure of rain water that had seeped into the earth. Upon the

existence of these same conditions the two witnesses predicated the opinion that hydrostatic pressure actually caused the pool's collapsed.

The record discloses that the existence of some of these conditions was denied by the plaintiff and one of his witnesses. For instance, Mr. Bentley, who built the pool testified: "The back fill was brought in by dump truck, dumped and a combination of what went in on its own and what was shoveled, it was back filled against the wall. Then, oh, I'd say about ten days after it was back filled, we had a rain—I think it rained about a day and a half, and compacted the dirt in then. Then after that was done, I brought more dirt in, filled in that and packed it as it was filled in, and until it was brought up to ground level." He placed a concrete walk around three sides of the pool and an apron or patio on the east side; he filled in the excavation, allowed the dirt to settle, refilled it, tamped it and then waited six months and poured the concrete on it; in his opinion it would have been impossible for there to have been extensive voids along the pool's east wall. He gave as a basis for his opinion: "The dirt that was filled in was all fine dirt. It was dry when it was filled in, and then after that soaking rain, and refilling and tamping, there wouldn't have been any way in the world there could have been any air space in there." The plaintiff and Mr. Bentley testified that during the respective periods that each of them owned the pool there were no cracks in the pool and that none were grouted or repaired; the plaintiff further denied there were any cracks in the cement walk.

It further appears from the record that the pool stood and was in continuous use for six years before the electric storm occurred. This was material evidence that its construction was reasonably sturdy.

It is obvious that the defendant's evidence did not serve to conclusively refute the case made by the plaintiff concerning the cause of the loss, but at best only made an issue of fact to be solved by the jury. This the jury did and the verdict awarding compensation for the loss of the swimming pool will not be disturbed.

■ The final matter for consideration is whether the finding

that the defendant was liable for penalty and attorney's fees was valid. The evidence would have authorized a verdict in accordance with the defendant's contentions. Therefore, under the holdings in *U. S. Fidelity &c. Co. v. Biddy Lumber Co.*, 114 Ga. App. 358, 359 (151 SE2d 466); *St. Paul Fire &c. Ins. Co. v. Postell*, 113 Ga. App. 862 (2) (149 SE2d 864), and *American Cas. Co. v. Seckinger*, 108 Ga. App. 262, 264 (5) (132 SE2d 794), a finding of bad faith was not authorized. Evidence showing a reasonable and probable cause for refusing to pay the claim vindicates the good faith of the company as effectually as would a complete defense to the action. *Interstate Life &c. Co. v. Williamson*, 220 Ga. 323, 326 (138 SE2d 668). Unless the penalty and attorney's fees are written off, a new trial will be necessary.

*Judgment affirmed on condition. Frankum, P. J., and Deen, J., concur.*